IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Steven L. Hinson, | ) | C/A No.: 3:12-1032-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this employment case, Steven L. Hinson ("Plaintiff") is suing the City of Columbia ("Defendant" or "the City"), alleging claims for failure to rehire and failure to accommodate pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"). This matter comes before the court on Defendant's motion for summary judgment filed on February 14, 2013. [Entry #21]. The motion for summary judgment having been fully briefed [Entry #25, #26], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant Defendant's motion.

I.      Factual and Procedural Background

Plaintiff was hired by Defendant on July 16, 1990, for the position of Utility Worker II in the Water Department. [Entry #21-5; Entry #21-6].[1] He was promoted to Foreman II on August 9, 1996. [Entry #21-7]. In August 2002, Plaintiff injured his back and his left leg while on the job. [Entry #22-17 at 8–12]. As a result of his injury Plaintiff underwent a series of medical procedures that kept him out of work on physical disability leave. *Id*. According to his workers' compensation claim records, Plaintiff's injury resulted in a finding that he reached maximum medical improvement on September 21, 2004, and he was assigned a 20% permanent impairment rating by his treating physician. [Entry #21-9]. Plaintiff accepted 97.5 weeks of compensation for a 32.5% permanent partial disability to his lumbar spine, totaling $38,109.83 in workers' compensation benefits. *Id*.

In April 2004, Plaintiff provided a physician's note indicating that he could return to work, but could not lift more than 30 pounds and must avoid excessive bending. [Entry #21-10].[2] On October 14, 2004, Plaintiff filed an additional workers' compensation claim, seeking additional treatment for his back, left leg, and hip. [Entry #21-9]. In early 2005, and prior to a hearing on his October 14, 2004 workers' compensation claim, Plaintiff returned to work and was assigned restricted duties as a Utility Tech/Locator in the Water Department. [Entry #21-9, #21-11]. This position allowed Plaintiff to work in a light duty capacity within the restrictions identified by his doctor. [Entry #22-17 at 12–

---

[1] Plaintiff had previously worked for Defendant, but had been terminated for failure to report to work. [Entry #21-4].

[2] It is unclear from the record before the court why Plaintiff did not return to work sooner after receiving the 2004 release to return, but it appears he did not return until 2005.

13]. After approximately a year of employment as a Utility Tech/Locator, Plaintiff's leg pain became so severe that he took additional physical disability leave. *Id*.

On January 5, 2007, Plaintiff successfully underwent surgery to insert a spinal cord simulator to block the nerve's communication of pain to his brain, significantly reducing the pain he experienced. [Entry #25-8; #22-17 at 10–11]. On February 28, 2007, Plaintiff filed a change of condition form seeking additional workers' compensation benefits. [Entry #21-9]. On March 12, 2007, Plaintiff's doctor released him to return to work on April 9, 2007, with limitations of no excessive bending and no lifting over 30 pounds. [Entry #25-10]. However, on April 5, 2007, his spinal cord simulator malfunctioned, requiring him to undergo another surgery on May 8, 2007, to correct the problem. [Entry #25-8 at 30].

Plaintiff's doctor provided a note to Defendant dated February 4, 2008, stating, "May return to work." [Entry #21-12]. This four word note did not convey any information concerning Plaintiff's condition or give any restrictions. *Id*. On February 19, 2008, Plaintiff participated in a functional capacity evaluation related to his workers' compensation claim. [Entry #21-13]. The physical therapist who conducted the test concluded that he could perform modified medium work with the exception of the left handed carry, which qualified for light work. *Id*. The therapist further indicated that Plaintiff could tolerate occasional walking, kneeling, bending, and reaching, but could not tolerate occasional squatting. *Id*. The therapist opined that Plaintiff could lift from 20 to 30 pounds on an occasional basis, while his lumbar range of motion remained

3

significantly limited and his aerobic capacity was poor. *Id*. There is no proof in the record regarding whether Defendant received the results of the functional capacity evaluation.

On June 9, 2008, Jacques Gilliam, then City Director of Human Resources, wrote to the workers' compensation carrier stating, "The City of Columbia does not have any light duty positions less strenuous than the Utility Tech/Locator's position [that] Mr. Steve Hinson was previously employed in." [Entry #21-14]. In response, on June 10, 2008, the adjuster sent a letter to Plaintiff's workers' compensation attorney enclosing the letter and requesting a demand for settlement of that claim. [Entry #21-15]. On August 4, 2008, Plaintiff and the City entered a consent order approved by the Workers' Compensation Commission. [Entry #21-9]. In this consent order, the City agreed to pay Plaintiff $49,598.43, representing 100% commuted value to include all accrued temporary total benefits due for permanent partial disability of 32.5% to the back/spine. *Id*. The City also agreed to continue to provide ongoing medical benefits, which totaled $132,267.92, as of August 2008. *Id*.

On March 2, 2009, Plaintiff filled out an EEOC Intake Questionnaire which identifies the date of disability discrimination as June 9, 2008. [Entry #21-16]. On March 6, 2009, Plaintiff filed a charge of discrimination with the EEOC claiming that he was denied reasonable accommodation to return to work. [Entry #21-17].

On April 2, 2009, Plaintiff filed an application for retirement disability benefits with the South Carolina Retirement Systems ("SCRS"). [Entry #21-18]. With his application, Plaintiff filed a Member's Disability Report. In this report, Plaintiff stated that his disability had prevented him from working as of February 2, 2006, and that he

had not returned to work since that time. [Entry #21-19]. The report also stated, "I had planned on retiring at the City of Columbia, but on August 6, 2002, I was injured on the job. After 3 surgeries and all the physical therapy, I have come to the conclusion that I am unable to work at the City of Columbia." *Id*.

Plaintiff underwent a medical evaluation for SCRS on June 26, 2009. [Entry #21-22]. The evaluating physician reported to SCRS that Plaintiff's impairment to his musculoskeletal system was severe and that he was limited to occasional lifting of 10 pounds, to frequent lifting of less than 10 pounds, and to standing or walking of 2 hours. *Id*. SCRS reviewed Plaintiff's evaluation and medical records from the doctors who treated his work related injuries. SCRS determined that Plaintiff's disability precluded his return to employment and recommended a finding of disability as of February 2, 2006. [Entry #21-23].

By letter dated July 1, 2009, SCRS notified Plaintiff that he was approved for continuing disability benefits. [Entry #21-24]. On March 20, 2012, Plaintiff filed the complaint in the instant action. [Entry #1-1]. By letter dated May 2, 2012, SCRS notified Plaintiff that his disability status was due for review to determine whether his medical condition had improved. [Entry #21-25]. Plaintiff completed and signed a Continuing Disability Review Report on May 28, 2012. [Entry #21-26]. In this report, Plaintiff stated that he was receiving disability benefits for his chronic back pain and chronic nerve damage to his left leg. *Id*. He reported that his condition had not changed since his last report, that he had not returned to work since his disability was approved, that he cannot return to work, and that his physician has not informed him that he is able to return to

5

work. *Id*. Plaintiff left blank the place on the form to indicate whether his physician has placed any restrictions on work activity. *Id*. In conjunction with his reapplication for retirement disability, Plaintiff completed a Daily Activities Questionnaire on June 12, 2012. [Entry #22]. Plaintiff indicated on this report that he has trouble sleeping, cannot perform household chores such as mopping, laundry, and cleaning showers and can only drive short distances. *Id*. Upon review of Plaintiff's 2012 report and medical records, the SCRS examiner found the "evidence indicates that the claimant has not seen significant medical improvement. We therefore recommend disability benefits be continued with a re-evaluation date in 3 years." [Entry #22-1]. By letter dated July 2, 2012, SCRS notified Plaintiff that he was approved for continuing disability benefits. [Entry #22-2].

II.     Discussion

    A.     Standard on Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

B.     Analysis

It is fundamental that in any claim under the ADA, the plaintiff bears the burden of proving he is a "qualified individual with a disability," which is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions" of his job. 42 U.S.C. § 12111(8). Defendant claims that Plaintiff has failed to show that he is a qualified individual with a disability, because he has indicated in his application for disability benefits that he is disabled such that he cannot work. [Entry #21-1 at 10–11].

The Supreme Court of the United States has explicitly held that filing for disability benefits does not necessarily preclude a court from finding that a terminated employee was able to fulfill his or her occupational duties as of the time of termination. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999). However, the Court also held:

> Summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial." An ADA plaintiff bears the burden of proving that []he is a "qualified individual with a disability"—that is, a person "who, with or without reasonable accommodation, can perform the essential functions" of [his] job. And a plaintiff's sworn assertion in an application for disability benefits that []he is, for example, "unable to work" will appear to negate an essential element of [his] ADA case—at least if []he does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, []he must proffer a sufficient explanation.

*Id.* (internal citations omitted).

Therefore, Plaintiff's application for and receipt of disability benefits is not dispositive of whether he can assert a claim under the ADA for the same period.

However, the *Cleveland* Court instructed that a plaintiff who has claimed to be totally disabled and has filed an ADA claim must have a good explanation of why these two disparate claims are not contradictory. "When presented with an apparent conflict between the charging party's claim of disability and his status as a 'qualified individual' under the ADA, the central question is whether the offered explanation for the conflict would warrant a reasonable juror's conclusion that, assuming the truth of, or the claimant's good faith belief in, the earlier statement, the claimant could nonetheless perform the essential functions of his job during the relevant time period." *EEOC v. Greater Baltimore Med. Center, Inc.*, 477 Fed. Appx. 68, 74 (4th Cir. 2012) (citing *Cleveland*, 526 U.S. at 807).

Here, Plaintiff stated the following in his member disability report:[3] "I had planned on retiring at the City of Columbia, but on August 6, 2002, I was injured on the job. After 3 surgeries and all the physical therapy, I have come to the conclusion that I am unable to work at the City of Columbia." [Entry #21-19 at 5]. Plaintiff argues that this statement was his indication that "he was unable to work for the City because, after his attempt to return, Jacques Gilliam informed Plaintiff's Workers' Compensation Adjustor that there were no positions available in which Plaintiff could work." [Entry #25 at 13 (emphasis omitted)].

Plaintiff also completed a continuing disability review report on May 28, 2012, in which he indicated that his physician had not informed him that he is able to return to

---

[3] The disability application must be completed by the member of the South Carolina retirement system or someone with legal authority to bind him. [Entry #21-19 at 2, 5]. Any person who knowingly makes a false statement on any SCRS record, shall be guilty of a crime. S.C. Code Ann. § 9-1-40.

work. [Entry #21-26 at 3]. Plaintiff avers that this response was at the instruction of a SCRS employee who told Plaintiff that they were only interested in new information. [Entry #25-1 at 6].

Assuming Plaintiff's explanations regarding the above statements are true, Plaintiff also indicated that he did not believe he could return to work and that there had been no change (better or worse) in his condition. [Entry #21-26 at 2]. Although Plaintiff argues that his prior explanation applies to his renewed statement that he is unable to work, Plaintiff did not qualify his response in any way. Additionally, there is no evidence that Plaintiff inquired about open jobs at the City at the time that he completed his continuing disability report, so he had no basis to believe that none was available. It logically follows that if Plaintiff's condition had not changed for better or for worse, he was also unable to work previously when he completed the original disability form on April 9, 2009. Because a reasonable juror could not reconcile the inconsistency between Plaintiff's statements to SCRS and his contention that he could have worked for the City with a reasonable accommodation, he has not shown that he is a qualified individual under the ADA. Therefore, the undersigned recommends Defendant's motion for summary judgment be granted because Plaintiff has failed to show an essential element of his ADA claims.

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #21] be granted and this case be dismissed with prejudice.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 3, 2013                                              Shiva V. Hodges
Columbia, South Carolina                                  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).