## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Steven L. Hinson, | ) | Civil Action No. 3:12-01032-MBS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| City of Columbia, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Steven L. Hinson ("Plaintiff") filed this action against his former employer, Defendant City of Columbia ("Defendant" or "the City"), alleging claims for failure to rehire and failure to accommodate pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ("ADA"). This matter is before the court on Defendant's motion for summary judgment, filed on February 14, 2013. ECF No. 21. Plaintiff responded to Defendant's motion on March 25, 2013, ECF No. 25, to which Defendant filed a reply on April 1, 2013. ECF No. 26.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Shiva V. Hodges for pretrial handling. On July 3, 2013, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's motion for summary judgment. ECF No. 27. Plaintiff filed objections to the Report and Recommendation on July 22, 2013. ECF No. 28. Defendant replied to Plaintiff's objections on July 24, 2013. ECF No. 29.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On July 16, 1990, Plaintiff was hired by Defendant for the position of Utility Worker II in the Water Department. ECF No. 21-5. On August 9, 1996, Plaintiff was promoted to the Foreman

1

II position.  ECF No. 21-8.  On  August 6, 2002, while still employed in the Foreman II capacity, Plaintiff sustained an on the job injury to his back and left leg.  ECF No. 22-17 at 8-12; ECF No. 21-9 at 2.  As a result of his injury, Plaintiff received workers' compensation benefits and underwent a series of medical procedures that kept him out of work on physical disability leave.  ECF No. 22-17 at 8-12.  According to his workers' compensation claim records, Plaintiff's injury resulted in a finding that he reached maximum medical improvement on September 21, 2004, and he was assigned a 20% permanent impairment rating by his treating physician.  ECF No. 21-9 at 2.  Plaintiff accepted 97.5 weeks of compensation for a 32.5% permanent partial disability to his lumbar spine, totaling $38,109.83 in workers' compensation benefits.  Id.

In April 2004, Plaintiff provided Defendant a physician's certificate to  return to work .  ECF No. 21-10.  According to the physician, Plaintiff could not lift more than 30 pounds and must avoid excessive bending of the lower back.  Id.  To assist Plaintiff in returning to work, Jacques Gilliam, Defendant's Human Resources Director, reviewed Plaintiff's personnel file to determine his qualifications for available positions consistent with his work restrictions.  ECF No. 25-8 at 6; ECF No. 25-4 at 5-6.  In January 2005, Gilliam located an open position that accommodated Plaintiff's medical restrictions.  ECF No. 25-4 at 7-8.  After speaking with Gilliam about the position, Plaintiff submitted an application for the Utility Technician/Locator position on January 7, 2005.  ECF No. 25-8 at 8; ECF No. 21-11 at 2.  Shortly thereafter, Plaintiff was assigned restricted duties as a Utility Technician/Locator in the Water Department.  ECF No. 21-9; ECF No. 21-11.  For approximately one year, Plaintiff adequately performed the duties of the position.  ECF No. 25-7 at 6.  On February 2, 2006, Plaintiff took additional physical disability leave due to the worsening pain in his leg caused by nerve damage from his previous on the job injury.  ECF No. 25-2 at 12-15; ECF No. 21-19 at 2.

On January 5, 2007, Plaintiff underwent surgery to implant a spinal cord stimulator. ECF No. 25-2 at 11. The stimulator blocked pain signals to Plaintiff's brain, thus reducing the pain he experienced. Id. On March 12, 2007, Plaintiff's doctor released him to return to work on April 9, 2007, with restrictions of no excessive bending and no lifting over 30 pounds. ECF No. 25-10 at 5. However, on April 5, 2007, Plaintiff's spinal cord stimulator malfunctioned. ECF No. 25-8 at 30. On May 8, 2007, Plaintiff underwent surgery to correct the problem. Id.

Plaintiff's doctor provided a note to Defendant dated February 4, 2008 releasing Plaintiff to return to work. ECF No. 21-12. The note simply stated, "May return to work." Id. The note did not provide any information concerning Plaintiff's condition or restrictions. Id. On February 19, 2008, at the request of the workers' compensation adjuster, Plaintiff participated in a Functional Capacity Evaluation. ECF No. 21-13 at 2. According to the physical therapist who conducted the evaluation, Plaintiff could perform modified medium work with the exception of the left handed carry, which qualified for modified light work. Id. The physical therapist further determined that while Plaintiff could not tolerate occasional squatting, he could tolerate "occasional walking, stair climbing, kneeling, crawling, bending, twisting, and reaching." Id. The physical therapist also indicated that Plaintiff could "lift from 20 to 30 pounds at various heights on an occasional basis." Id. Finally, the physical therapist determined that Plaintiff's lumbar range of motion remained significantly limited and his aerobic capacity was poor. Id. The record contains no information regarding whether Defendant received the results of the Functional Capacity Evaluation.

On June 9, 2008, Gilliam submitted a letter to the workers' compensation adjuster stating that "[t]he City of Columbia does not have any light duty positions less strenuous than the Utility Tech/Locator's position [that] Mr. Steve Hinson was previously employed in." ECF No. 21-14. In

response, on June 10, 2008, the workers' compensation adjuster sent a letter to Plaintiff's workers' compensation attorney in which he enclosed Gilliam's letter and requested a demand for settlement of the claim. ECF No. 21-15. On August 4, 2008, Plaintiff and Defendant entered into a consent order approved by the Workers' Compensation Commission. ECF No. 21-9 at 2. According to the consent order, Defendant agreed to pay Plaintiff $49,598.43, representing 100% commuted value to include all accrued temporary total benefits due for permanent partial disability of 32.5% to the back/spine. Id. at 3. Defendant also agreed to continue providing ongoing medical benefits. Id.

On January 20, 2009, Plaintiff wrote a letter to the City Manager, the Mayor of Columbia, and members of Columbia's City Council. ECF No. 25-8 at 28. In the letter, Plaintiff detailed what he believed to be unfair treatment due to his on the job injury. Id. After receiving no response to his letter, on March 2, 2009, Plaintiff completed an Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire. ECF No. 21-16. On March 6, 2009, Plaintiff filed a charge of discrimination with the EEOC claiming that he was denied reasonable accommodation to return to work. ECF No. 21-17. Both the EEOC Intake Questionnaire and charge of discrimination identify the date of disability discrimination as June 9, 2008. ECF No. 21-16 at 3; ECF No. 21-17 at 2.

Plaintiff filed an application for retirement disability benefits with the South Carolina Retirement Systems ("SCRS") on April 2, 2009. ECF No. 21-18. Along with the disability benefits application, Plaintiff filed a Member's Disability Report. ECF No. 21-19. In the report, Plaintiff indicated that his disability had prevented him from working as of February 2, 2006. Id. at 2. Additionally, in the report, Plaintiff included the following remarks: "I had planned on retiring at the City of Columbia, but on August 6, 2002, I was injured on the job. After 3 surgeries and all the

physical therapy, I have come to the conclusion that I am unable to work at the City of Columbia." Id. at 5.

On June 26, 2009, as part of the SCRS disability benefits application process, an SCRS medical examiner issued a Disability Rationale to explain its evaluation of Plaintiff's medical condition and records. ECF No. 21-23. According to the medical examiner, Plaintiff suffered from a severe impairment to his musculoskeletal system. ECF No. 21-22 at 4. The medical examiner further indicated that Plaintiff was limited to occasional lifting and/or carrying 10 pounds; frequent lifting of less than 10 pounds; walking or standing of 2 hours; and sitting of 6 hours. ECF No. 21-23 at 2. Based upon his evaluation, the medical examiner determined that Plaintiff's disability precluded his return to employment and recommended a finding of disability as of February 2, 2006. ECF No. 21-23. In a letter dated July 1, 2009, SCRS informed Plaintiff that he was approved for continuing disability retirement benefits.

On August 30, 2011, the EEOC issued its reasonable cause determination of Plaintiff's charge of discrimination. ECF No. 25-16 at 4. After receiving his Notice of Right to Sue[1] from the EEOC, Plaintiff filed the complaint in this action on March 20, 2012. ECF No. 1-1.

By letter dated May 2, 2012, SCRS notified Plaintiff that his disability status was due for review to determine if he should continue to receive disability benefits. ECF No. 21-25 at 2. Along with the letter, and to facilitate this determination, SCRS enclosed a Continuing Disability Review Report ("the disability review report"). ECF No. 21-26. Plaintiff completed the disability review report on May 28, 2012. Id. at 5. In the disability review report, Plaintiff stated that he was receiving disability benefits for his chronic back pain and chronic nerve damage to his left leg. Id.

---

[1]The record does not contain the date of this notice.

5

at 2.  Furthermore, Plaintiff indicated that his condition had not changed since his last report; he had not returned to work since his disability was approved; he could not return to work; and his physician had not informed him that he was able to return to work.  Id. at 2-3.  In the space on the form to indicate whether his physician had placed restrictions on his work activity, Plaintiff provided no information.  Id. at 3.

In addition to completing the disability review report, Plaintiff completed a Daily Activities Questionnaire on June 12, 2012 ("the activities questionnaire").  ECF No. 22.  In the activities questionnaire, Plaintiff stated that he can no longer perform chores such as mopping, laundry, and cleaning showers; has trouble sleeping; and can only drive short distances.  Id. at 2-5.

After reviewing Plaintiff's current medical records, the SCRS medical examiner determined that Plaintiff had not seen significant medical improvement and recommended disability benefits be continued with a re-evaluation in 3 years.  ECF No. 22-1.  SCRS notified Plaintiff of his approval for continuing disability benefits in a letter dated July 2, 2012.  ECF No. 22-2 at 2.

## II.    STANDARD OF REVIEW

### A.    Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court reviews de novo only those portions of the Magistrate Judge's Report and Recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.

1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

**B.**    **Summary Judgment**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party.  Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 434 (4th Cir. 2011).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with conclusions

in his or her own affidavit or deposition that are not based on personal knowledge. See Latif v. Cmty. Coll. of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

### III.    DISCUSSION

Plaintiff alleges disability discrimination as a result of Defendant's decision not to reinstate him into a different position on June 9, 2008.  Defendant contends that because Plaintiff indicated in his disability benefits application that his disability renders him unable to work, he cannot now claim to be a "qualified individual" under the ADA who can work.

### A.    ADA Claims Generally

Courts analyze ADA claims under a modified version of the three-step framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  See Malone v. Greenville County, No. 06-2631, 2008 WL 4557498, at *8 (D.S.C. Aug. 11, 2008) (citing Heiko v. Colombo Savings Bank, 434 F.3d 249, 258 (4th Cir. 2006)).  Under McDonnell Douglas, the plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence.  Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996).  If the plaintiff establishes a prima facie case, an inference of discrimination is raised and the burden shifts to defendant to produce admissible evidence that the defendant took adverse employment action "for a legitimate, non-discriminatory reason."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254  (1981).  If the defendant carries its burden, the presumption of discrimination created by the prima facie case disappears from the case, and the plaintiff must then prove by a preponderance of the evidence that the defendant's articulated reason was a pretext for unlawful discrimination.  See id. at 253–55.  In order for a plaintiff to demonstrate pretext, he must prove "the legitimate reasons offered by the

defendant were not its true reasons, but were a pretext for discrimination." <u>Reeves v. Sanderson Plumbing Prods.</u>, 530 U.S. 133, 143 (2000).

## B.     **Failure to Rehire**

The Fourth Circuit has not specifically outlined the requirements for a prima facie case of failure to rehire under the ADA.  However, the Fourth Circuit's failure to promote framework offers guidance for the instant case.  Under that framework, the plaintiff must prove that: "(1) he is within the ADA's protected class; (2) he applied for the position in question; (3) he was qualified for that position; and (4) the defendant rejected his application under circumstances that give rise to an inference of discrimination." <u>Malone v. Greenville County</u>, No. 06-2631, 2008 WL 4557498, at *9 (D.S.C. Aug. 11, 2008) (citing <u>Heiko v. Colombo Savings Bank</u>, 434 F.3d 249, 258 (4th Cir. 2006); <u>Brown v. McLean</u>, 159 F.3d 898, 902 (4th Cir. 1998)).

The ADA prohibits discrimination only "against a qualified individual" with a disability.  42 U.S.C. § 12112(a).  A plaintiff bears the burden of proving he is a qualified individual with a disability, which is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

As relevant here, a plaintiff suffering from a disabling medical condition who has filed a claim under the ADA also may become eligible for various state and federal disability benefits programs.  In applying for disability benefits, "a plaintiff's sworn assertion . . . that [he] is, for example, 'unable to work' will appear to negate an essential element of [his] ADA case." <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 806 (1999).  In other words, the plaintiff claims that he

9

can work (for purposes of the ADA claim), while simultaneously claiming that he cannot work (in the disability benefits application).

The United States Supreme Court has held that applying for disability benefits does not necessarily preclude a court from finding that a terminated employee was able to fulfill his or her occupational duties as of the time of his or her termination.  Id. at 805-06.  The Court also held that "an ADA Plaintiff cannot simply ignore the apparent contradiction that arises out of [an] earlier . . . total disability claim.  Rather, [the plaintiff] must proffer a sufficient explanation."  Id. at 806.  Further explaining the requirements necessary to proffer a sufficient explanation, the Court held that, "[t]o defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without 'reasonable accommodation.'"  Id. at 807.  The appropriate analysis requires a "careful examination of the factual record to determine whether the plaintiff had offered a satisfactory explanation for the apparent contradiction between the disability benefits application and the ADA claim."  EEOC v. Greater Balt. Med. Ctr. Inc., 477 F. App'x 68, 73 (4th Cir. 2012); see also EEOC v. Stowe-Farm Mills, Inc., 216 F.3d 373, 377, 379-80 (4th Cir. 2000); Fox v. Gen. Motors Corp., 247 F.3d 169, 177 (4th Cir. 2001).

**C.      The Magistrate Judge's Report and Recommendation**

The Magistrate Judge found that Plaintiff failed to establish a prima facie case for failure to rehire/accommodate.  Specifically, the Magistrate Judge determined that Plaintiff failed to meet his burden of showing that he is a "qualified individual" under the ADA.

Relying on <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 807 (1999), the Magistrate Judge noted that "a plaintiff who has claimed to be totally disabled and has filed an ADA claim must have a good explanation of why these two disparate claims are not contradictory." ECF No. 27 at 8. In analyzing Plaintiff's explanations, the Magistrate Judge noted that Plaintiff indicated on his application for SCRS disability benefits that he was disabled such that he could not work for Defendant. The Magistrate Judge further noted that in explaining his statements to SCRS, Plaintiff argues that when he attempted to return to work, Defendant informed him that there were no positions available in which he could work. The Magistrate Judge also found that, on May 28, 2012, Plaintiff completed a continuing disability review report in which Plaintiff indicated that his physician had not informed him that he was able to return to work. The Magistrate Judge found that Plaintiff explained this response by claiming that an SCRS employee told him to only include new information.

After considering the evidence, the Magistrate Judge found that Plaintiff failed to proffer a sufficient explanation that would allow a reasonable jury to "reconcile the inconsistency between [his] statements to SCRS and his contentions that he could have worked for the City with reasonable accommodation." ECF No. 27 at 9. Of significance to the Magistrate Judge's determination was Plaintiff's indication on the disability review report that "he did not believe he could return to work and that there had been no change (better or worse) in his condition." ECF No. 27 at 9. The Magistrate Judge found that despite the fact that Plaintiff argues that his prior explanation (that when he attempted to return to work, Defendant told him no positions were available in which he could work) applied to his renewed statement of inability to work, he did not qualify his renewed response. Additionally, the Magistrate Judge found that there was no evidence Plaintiff had inquired about

11

open positions with Defendant when he completed the disability review report.  Thus, as the Magistrate Judge noted, Plaintiff had no basis to believe that an appropriate position was not available.  Finally, the Magistrate Judge found that it logically follows that "if Plaintiff's condition had not changed for better or for worse, he was also unable to work previously when he completed the original disability form on April 9, 2009."  ECF No. 27 at 9.  Accordingly, the Magistrate Judge recommended granting Defendant's motion for summary judgment because Plaintiff failed to establish an essential element of his ADA claim, that he is a qualified individual with a disability.

**D.    Plaintiff's Objections to the Report and Recommendation**

Plaintiff asserts that the Magistrate Judge erred in finding that he could not establish that he was a "qualified individual with a disability."  ECF No. 28 at 1.  In support of this assertion, Plaintiff contends that he was, in effect, forced to apply for retirement disability benefits after he was informed that Defendant did not have any positions to accommodate his work restrictions.  Additionally, Plaintiff contends that in his April 9, 2009 application for disability benefits, he did not state that he is unable to work with a reasonable accommodation.

Plaintiff also argues that the Magistrate Judge erroneously relied upon his representations in the disability review report.  Specifically, Plaintiff contends that her reliance on his indication in the disability review report that his condition had not improved for better or for worse overlooks the fact that none of the forms he filled out inquired whether he could work with a reasonable accommodation.  ECF No. 28 at 5.  Rather, as Plaintiff contends, his doctor released him to work on February 4, 2008 with, presumably, the same restrictions that applied when he was first released to work in March of 2007.

12

Finally, Plaintiff asserts that the Magistrate Judge erred when she relied upon his failure to qualify his answer when he indicated in his disability review report that he did not believe he could return to work. Plaintiff contends that he was not required to qualify his answer. Plaintiff further asserts that despite his failure to qualify his answer, a reasonable juror could infer that he "understood this question to be asking whether he believed he could return to work [for the City]." ECF No. 28 at 6. In other words, Plaintiff claims that a reasonable juror would understand that he answered the question with the understanding that he could not return to work because Defendant refused to provide him a reasonable accommodation. Based on his evidence, Plaintiff contends that a reasonable juror could reconcile his statements to SCRS with his contention that he is able to perform the essential functions of his job with a reasonable accommodation. Therefore, Plaintiff urges the court to reject the Magistrate Judge's recommendation to grant Defendant's motion for summary judgment.

E.     **Analysis**

Plaintiff's argument that a reasonable juror could reconcile the inconsistency between his statements to SCRS and his claim that he could work for Defendant with a reasonable accommodation has merit. In his SCRS benefits application, Plaintiff did not refer to the possibility of reasonable accommodation, nor was he required to. To receive SCRS disability benefits, a medical examiner must certify that an applicant is "physically incapacitated for the further performance of duty [and] that the incapacity is likely to be permanent." S.C. Code Ann. § 9-1-1540. As Plaintiff correctly argues, this certification process does not take into account an applicant's ability to work with reasonable accommodation. Cf. Cleveland, 526 U.S. at 803 ("[A]n ADA suit claiming that the plaintiff can perform her job *with* reasonable accommodation may well prove

consistent with [a Social Security Disability Insurance] claim that the plaintiff could not perform her own job (or other jobs) *without* it.").  Moreover, Plaintiff's representation in the Member's Disability Report submitted with his benefits application that his work restrictions included "no lifting over 30 [pounds], and no excessive bending" is consistent with the argument he makes before the court.  ECF No. 21-19 at 4.  Specifically, that on June 9, 2008, when Gilliam indicated that no position less strenuous than Utility Tech/Locator was available, Plaintiff did not require a less strenuous position because he could still perform the essential functions of that position.  In early 2005, under the same work restrictions Plaintiff identified in the Member's Disability Report, Plaintiff  performed the essential functions of the Utility Tech/Locator position.  James Johnson, Water Department Superintendent, confirmed Plaintiff's job performance in the following deposition testimony:

> Q:  And when Mr. Hinson came back . . . in '05 for that one year before he [sic] legs started to bother him, he performed the essential functions and duties of his job, correct?

ECF No. 25-7 at 11 (Johnson Dep. 14:21, Sept. 25, 2012).

> A:  That's correct.

Id. at 12 (Johnson Dep. 15:1 ).

The court further concludes that Plaintiff's responses in the disability review report are consistent with his ADA claim.  In that report, Plaintiff checked "no" in response to the following questions: (1) "Has there been any change (better or worse) in your disabling condition since you last reported information to us?" and (2) "[D]o you believe that you could return to work?"  ECF No. 21-26 at 2.  Because Plaintiff's physician had not given him additional return to work notes or restrictions, an SCRS representative, as Plaintiff explains, instructed him to check "no" on the questions in the report.  Plaintiff further avers that the disability review report, like the initial

disability benefits application, did not take into account his ability to work with reasonable accommodation. Considering the context in which Plaintiff completed the disability review report, Plaintiff's evidence is sufficient to allow a reasonable juror to reconcile his inconsistent statements. Accordingly, Plaintiff has met his burden of showing that a reasonable jury could determine that he is a "qualified individual" under the ADA.[2]

In finding that Plaintiff failed to meet his burden of proving he is a "qualified individual" under the ADA, the Magistrate Judge did not address Defendant's additional arguments with regard to the remaining elements of the prima facie case. The court will now address Defendant's remaining arguments.

**F.**    **Applied for the Positions in Question**

Under the second prong of the prima facie case, Plaintiff must prove that he applied for the positions in question. Plaintiff contends that he was qualified for three positions Defendant posted from February 2008 through June 2008. Plaintiff concedes that he did not submit a formal application for any of the positions. Plaintiff contends, however, that despite his failure to submit a formal application, he, nevertheless, "constructively applied for reinstatement." ECF No. 25 at 14. Specifically, Plaintiff asserts that because he had expressed his interest in returning to work, he believed the Human Resources Director would locate a position for him as he had done in the past.

In response, Defendant contends that Plaintiff's belief was misplaced. Defendant avers that Plaintiff had notice that "employees on physical disability leave desiring to return to work 'must give

---

[2]In applying the <u>Cleveland</u> standard, the court only finds that Plaintiff has proffered an explanation sufficient to harmonize his SCRS disability benefits claim and his ADA claim. At this point in the analysis, the court has yet to determine whether, considering the record as a whole, a genuine factual dispute exists as to whether Plaintiff was a "qualified individual," that is, an individual who with reasonable accommodation could perform the essential fucntions of the position he holds or desires.

reasonable notice of intent to return to work.'" ECF No. 26 at 5 (citing City of Columbia Employee Handbook, p. 39; ECF No. 22-3 at 2). Defendant also argues that "unless the employee's position is vacant, the employee 'must apply for any vacant and posted position for which he meets the minimum qualifications.'" Id.

### 1.    **Applicable Law**

When considering whether a plaintiff has met his burden of applying for "the position in question," the Fourth Circuit has held that "[i]f an employer has a formal system of posting vacancies and allowing employees to apply for such vacancies, an employee who fails to apply for a particular position cannot establish a prima facie case of discriminat[ion]." Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004) (citing Wagner v. G.A. Gray Co., 872 F.2d 142, 145-46 (6th Cir. 1989)). However, "there are certain situations where less than a formal application is adequate." Wagner, 872 F.2d at 146. For example, an employer may be obligated to consider the employee for rehire, despite an employee's failure to submit an application, where there is evidence that it was an employer's "practice to recall former employees or to inform them of future job openings." Id.; see also Justus v. Junction Center for Independent Living Inc., No. 11-0039, 2012 WL 844340, at *5 (W.D. Va. March 12, 2012) (rejecting plaintiff's argument that his employer was required to consider him for a position because he failed to show that the employer "rehire[d] former employees without receiving applications or . . . personally inform[ed] them of future job openings.").

### 2.    **Analysis**

Here, it is undisputed that Plaintiff failed to submit a formal application for the positions in question. Rather, Plaintiff contends that he did not submit an application because of his "good faith belief that Gilliam would locate a position for [him] as he had done in the past." ECF No. 25 at 14.

It is undisputed that in 2005, Gilliam located and informed Plaintiff about the Utility Technician/Locator position.   Additionally, Gilliam gave the following testimony during his deposition:

> Q: Did you make any efforts to try to locate a job for Mr. Hinson in late 2007 or 2008?  Do you remember?

ECF No. 25-4 at 18 (Gilliam Dep. 27:6-27:8, Sept. 27, 2012).

> A: I don't remember but I'm certain that we did it if there was something that was within the restrictions and it was something . . . that we were asked to do, and we saw that he was looking for work.  I'm certain that we did, but I can't say that for sure.

Id. (Gilliam Dep.  27:9-27:14).

Also, Defendant was aware of Plaintiff's desire to return to work.  On March 23, 2007, after Plaintiff's physician provided Defendant with a return to work note, Gilliam received a fax from Defendant's nurse that stated the following: "Please see if we can accomodate [sic] Mr. Hinson's work restrictions either in his current dep[artment] or somewhere else in the city."  ECF No. 25-10 at 4.  Although Plaintiff's spinal cord stimulator complications, which began in April of 2007, prevented him from working until 2008, Plaintiff's physician again provided Defendant with a return to work note dated February 4, 2008.

The court finds that Plaintiff has provided sufficient evidence to show that it was reasonable for him to believe that Gilliam would locate and advise him of open positions to accommodate his medical restrictions.  Despite Defendant's claim that its written policy required an employee to submit a formal application, the evidence suggests that Defendant's practice is to inform employees of future job openings.  Even if the court accepts Defendant's argument that a formal application was

required,[3] it was reasonable, at the very least, for Plaintiff to assume that Gilliam would inform him of positions to which he should apply.[4]  Accordingly, the court finds that Defendant's motion for summary judgment is denied with regard to this issue.

## G.     Qualified for the Positions

In addressing the third prong of the prima facie case, Plaintiff asserts that he qualified  for several positions with Defendant that were vacant from February 2008 through May 2008.  Specifically, Plaintiff argues that with reasonable accommodation, he could perform the essential functions of the following positions: (1) Meter Maintenance Control Specialist; (2) Water Customer Service Representative; and (3) Custodian.   Defendant avers that Plaintiff does not have the necessary skills or physical abilities to perform the essential function of the positions, and that it was not required to provide Plaintiff's requested accommodation.

### 1.     Applicable Law

In determining the essential functions of a position, "consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job."   42 U.S.C. § 12111(8).

---

[3]In his deposition, Gilliam suggests that an application was not required.  In response to a question concerning the steps he took to locate the Utility Technician/ Locator position for Plaintiff in 2005, Gilliam stated the following: "I don't remember whether he applied for it or not, but I know we placed him on that job.  It was within the restrictions . . . ."  ECF No. 25-4 at 7 (Gilliam Dep. 11:5-11:8).

[4]In January 2005, after Gilliam made him aware of the Utility Technician/Locator position, Plaintiff submitted an application prior to his assignment to the position.

2.    **Analysis**

As noted above, Plaintiff identifies three positions that he claims he could have performed with reasonable accommodation.  First, with regard to the Custodian position, Plaintiff identified one accommodation, assistance lifting objects over 30 pounds, that he claims would allow him to perform the essential functions of the position.  The essential functions of the Custodian position, includes, among other things, "cleaning windows," "mopping floors," and "scrubbing/polishing floors."  ECF No. 22-15 at 2.  On multiple occasions, Plaintiff has stated that he cannot perform these tasks.  In the daily activities questionnaire submitted with the disability review report, Plaintiff stated that since his disabling condition began, he can no longer mop the kitchen and bathroom floors, nor can he scrub the showers and tubs.  Furthermore, in his deposition, Plaintiff testified that he does not vacuum or clean windows.  The court fails to see, and Plaintiff did not provide evidence to show, how lifting assistance would allow him to perform the essential functions of the Custodian position.  Consequently, Defendant is entitled to summary judgment on this issue.

Second, with regard to the Water Customer Service Field Representative position ("WCSFR"), the court finds that Plaintiff could not perform the essential functions of the position, with or without a reasonable accommodation.  According to Defendant's job description, the WCSFR position  "[r]equires light work that involves walking or standing some of the time and involves exerting up to 20 pounds of force . . . ."  ECF No. 22-13 at 4.  While the physical requirements are within Plaintiff's 30 pound lifting restriction, the position  "also requires word processing, data entry, spreadsheet and computer software skills."  ECF No. 26 at 5.  In his deposition testimony, Plaintiff stated that he has never had to use computer skills as part of any job duties.  Although Plaintiff testified that he uses his home computer programs, he also stated that he

cannot type and does not know how to take shorthand. In sum, Plaintiff's evidence does not demonstrate his ability to perform the essential functions of the WCSFR position. Therefore, the court finds that Defendant is entitled to summary judgment on this issue.

Finally, with regard to the Meter Maintenance Control Specialist position, the court finds that a genuine issue of material fact exists as to whether Plaintiff could have performed this position with his requested lifting accommodation. The position requires medium to heavy work including pushing or raising objects; lifting and distributing construction materials; and exerting between 20 to 50 pounds of force on a recurring basis and 50 to 100 pounds on an occasional basis. Additionally, the position does not require any clerical or computer skills. Based on Defendant's job description, it is reasonable to conclude that Plaintiff could perform this job with lifting assistance for objects over 30 pounds. Despite evidence that Plaintiff could have performed the position with lifting assistance, Defendant asserts that it was not required to provided the requested accommodation. The court agrees.

As Defendant correctly argues, Plaintiff needed permanent lifting assistance. Plaintiff presented no evidence to dispute the permanency of his lifting restrictions. Defendant also argues that "[w]hile such modifications may be afforded on a limited, short term basis . . . there is no City policy or law requiring elimination of essential functions to accommodate permanent disabilities." ECF No. 26 at 2. Defendant's policy allowed it to accommodate disabled employees with restricted duties for 180 days. Although an exception was given to Plaintiff in 2005 when he was assigned restricted duties for approximately one year, Defendant is not required to provide restricted duties indefinitely, which would, in effect, eliminate an essential function. See EEOC v. Dollar General Corp., 252 F. Supp. 2d 277, 291-292 (M.D.N.C. 2003); Hill v. Harper, 6 F. Supp. 2d 540, 544 (E.D.

Va. 1998) (finding that the plaintiff's request for a permanent accommodation would eliminate an essential function of the job).   Moreover, the Fourth Circuit has found that "[a]n accommodation is . . . unreasonable if it requires elimination of an essential duty." Champ v. Baltimore County, 91 F.3d 129, 1996 WL 383924, at *2 (4th Cir. 1996) (unpublished table decision).  Thus, Plaintiff has failed to show that he was qualified for the positions.  Having failed to establish a prima facie case of failure to rehire,  Defendant's motion for summary judgment is granted as to this issue.

**H.    Failure to Accommodate**

In addition to his failure to rehire claim, Plaintiff also asserts a failure to accommodate claim. The court fully addressed and found that Plaintiff was unable to perform the essential functions of the identified positions with reasonable accommodation.  Thus, it is unnecessary for the court to revisit the issue.  However, in response to Plaintiff's failure to accommodate claim, Defendant claims that this court lacks subject matter jurisdiction to hear Plaintiff's case.  The court will now address this issue.

**I.    Exhaust Administrative Remedies**

Defendant contends that Plaintiff failed to exhaust his administrative remedies.  Defendant asserts that to seek relief under the ADA, Plaintiff was required to file a charge of discrimination with the South Carolina Human Affairs Commission ("SHAC") within 300 days of the alleged discriminatory act or the Equal Employment Opportunity Commission within 180 days.  Defendant argues that the 180 day limitation applies because Plaintiff's charge of discrimination, dated March 6, 2009, was not filed or referred to SHAC.  Thus, as Defendant contends, Plaintiff is barred from seeking relief for actions that occurred prior to September 6, 2008, 180 days prior to Plaintiff's filing.

Plaintiff argues that the EEOC referred his charge of discrimination to SHAC. Therefore, as Plaintiff argues, he is allowed to seek relief for actions occurring after May 10, 2008, 300 days prior to filing his charge of discrimination.

### 1.    Applicable Law

The ADA incorporates the enforcement procedures of Title VII of the Civil Rights Act of 1964. See Sydnor v. Fairfax County, 681 F.3d 591, 593 (4th Cir. 2012) (citing 42 U.S.C. § 12117(a)). Included within those procedures is the requirement that a plaintiff must exhaust his or her administrative remedies before pursing a suit in federal court. Id. Significantly, a plaintiff's "failure to exhaust administrative remedies concerning [an ADA claim] deprives the federal courts of subject matter jurisdiction over the claim." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citing Davis v. North Carolina Dep't of Corr., 48 F.3d 134, 138-40 (4th Cir. 1995) (holding that the federal courts lacked subject matter jurisdiction because plaintiff failed to exhaust her administrative remedies).

In order to exhaust administrative remedies, a plaintiff must file a charge of discrimination with the EEOC. See Evans v. Technologies Applications & Service Co., 80 F.3d 954, 962 (4th Cir. 1996). Under federal law, the charge of discrimination must be filed within two possible limitations periods. See 42 U.S.C. § 2000e-5(e)(1). As a general rule, plaintiff must file the charge of discrimination with the EEOC within 180 days of the alleged discriminatory act. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 439 (4th Cir. 1998), abrogated on other grounds by Edelman v. Lynchburg Coll., 228 F.3d 503 (4th Cir. 2000), rev'd on other grounds, 535 U.S. 106 (2002). "However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." Id.

To ensure states have priority in addressing discrimination, "no charge may be filed with the EEOC until 60 days have elapsed from initial filing of the charge with an authorized state or local agency, unless that agency's proceedings 'have been earlier terminated.'" EEOC v. Commercial Office Products Co., 486 U.S. 107, 111 (1988) (quoting 42 U.S.C. § 2000e-5(c)). If a plaintiff initially files the charge with the EEOC, the EEOC's referral of that charge to an "appropriate state or local agency properly institutes the agency's proceedings within the meaning of the act, and the EEOC may hold the charge in 'suspended animation' during the agency's 60-day period of exclusive jurisdiction." Id. (quoting Love v. Pullman Co., 404 U.S. 522, 525-26 (1972)). Because of the 60-day deferral period, a charge must be filed with, or the EEOC must make referral to, the state agency within 240 days of the unlawful employment practice to ensure that the charge is filed with the EEOC within the 300-day limit. See Mohasco Corp. v. Silver, 447 U.S. 807, 814, n.16 (1980). If a plaintiff does not file within 240 days, the charge is "timely filed with the EEOC if the state or local agency terminates its proceedings before 300 days." Commercial Office Products Co., 486 U.S. at 111. "[A] state agency's waiver of the 60-day deferral period, pursuant to a worksharing agreement with the EEOC, constitutes a 'termination' of its proceedings so as to permit the EEOC to deem a charge filed and to begin to process it immediately." Id. at 112.

### 2.    Analysis

Here, Plaintiff identifies the date of alleged discriminatory conduct as June 9, 2008. On March 6, 2009, 271 days later, Plaintiff filed a charge of discrimination with the EEOC. Immediately thereafter, the EEOC sent a copy of Plaintiff's charge and a charge transmittal form to SHAC, which has state authorization to process charges of employment discrimination. The transmittal form stated that "pursuant to the worksharing agreement, this charge is to be initially

investigated by the EEOC." ECF No. 25-13 at 2.  On March 23, 2009, SHAC returned the transmittal form to the EEOC, indicating on the form that SHAC waived its right to "initially investigate the charge." Id.  Upon its waiver, SHAC effectively terminated its proceedings on March 23, 2009, 288 days after the alleged date of discriminatory conduct.  Therefore, Plaintiff timely filed his charge of discrimination with the EEOC within the 300-day limit.  Consequently, the court finds that it has subject matter jurisdiction over Plaintiff's claims.

### IV.    CONCLUSION

For the reasons stated herein, the court concurs in the Magistrate Judge's recommendation that Defendant's motion for summary judgment be granted.  Accordingly, Defendant's motion for summary judgment, ECF No. 21, is **GRANTED**.  Plaintiff's complaint is **DISMISSED**, with prejudice.

**IT IS SO ORDERED.**

/s/ Margaret B. Seymour
Senior United States District Judge

Columbia, South Carolina

September 23, 2013